UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-21203-CIV-WILLIAMS/SIMONTON

HARD CANDY, LLC, a Florida
Limited Liability Company

      Plaintiff,

v.

ANASTASIA BEVERLY HILLS,
INC.,

      Defendant.

_____/

<u>SEALED ORDER ON PLAINTIFF'S MOTION TO
EXCLUDE THE EXPERT OPINION TESTIMONY
AND REPORT OF CHRISTOPHER A. MARTINEZ</u>

      This matter came before the Court upon Plaintiff's Motion to Exclude the Expert

Opinion Testimony and Report of Christopher A. Martinez, (sealed), ECF. No. [44].  The

Defendant has filed a Response to the Motion, ECF No. [54] (sealed), and the Plaintiff has

filed a Reply, (sealed) ECF No. [64].  The Honorable Kathleen M. Williams, United States

District Judge, has referred the Motion to the undersigned Magistrate Judge, ECF No.

[115].  For the following reasons, the Motion to Exclude is Denied.

      I.      <u>BACKGROUND</u>

      This trademark infringement action was initiated when Plaintiff Hard Candy, LLC,

"Hard Candy" filed a four-count Complaint against Defendant Anastasia Beverly Hills,

Inc., ("Anastasia") alleging that Anastasia attempted to confuse purchasers of beauty

cosmetics by using, without permission, Plaintiff's registered trademark for "Hard

Candy" to describe one of the Defendant's cosmetic products, ECF No [1] at 1-3.

Specifically, Plaintiff contends that the Defendant has sold a product entitled "Glow Kit"

which bears the mark "Hard Candy" throughout the United States, as well as, on the

internet.[1]  In the Complaint, Plaintiff alleges Federal Trademark Infringement, 15 U.S.C. §§ 1114-1117, the Lanham Act § 32 (Count I); Federal Unfair Competition, False Designation of Origin and False Description, 15 U.S.C. § 1125(a); Lanham Act § 43(a) (Count II); Common Law Trademark Infringement (Count III); and, Common Law Unfair Competition (Count IV).   In the Complaint, Plaintiff sought to recover actual, general, special and statutory damages, including Defendant's profits, if any, trebled pursuant to 15 U.S.C. 1117 § (b), or enhanced pursuant to 15 U.S.C. § 1117(c)(2), ECF No. [1] at 14.

## II.   MOTION TO EXCLUDE

In the Motion to Exclude, the Plaintiff seeks to exclude the testimony of Christopher Martinez, the Defendant's damages expert.  The Plaintiff contends that Mr. Martinez, a CPA, who Defendant intends to call as a damages expert at trial, should be excluded from testifying because: 1) his opinions are directly inconsistent with Plaintiff's legal entitlement to Defendant's profits in a trademark infringement action, and 2) Mr. Martinez seeks to offer testimony that is beyond his expertise, is conclusory and unsupported by research or investigation, and is based on improper methodologies, ECF No. [44] at 2.[2]  As to the expert's methodology, the Plaintiff specifically takes issue with Mr. Martinez's reduction of the calculation of the Defendant's profits based upon the configuration of the make-up kit, and based upon a royalty agreement between the

---

[1] The product at issue is the Defendant's "Gleam Glow Kit" which contained four shades of make up with the following names: Hard Candy, Mimosa, Starburst and Crushed Pearl. Plaintiff's claims related to the use of the trademarked name "Hard Candy" on one of the four shade names.

[2] Plaintiff contends that it is entitled to recover Defendant Anastasia's profits, less Defendant's claimed costs, which is $3,968.871, ECF No. [44].  Mr. Martinez, after making reductions, claims that the damages are, at most, $90,319.00, ECF No. [44-3] at 24.

Plaintiff and a third party who is not involved in this action.

In Response to the Motion to Exclude, Defendant Anastasia contends that if the Plaintiff proves liability at trial, it apparently seeks to obtain every dollar of profits that Anastasia earned on the "Gleam Glow Kit". ECF No. [54] at 5. Defendant contends that its expert, Christopher Martinez, evaluated and quantified the economic remedies due to Plaintiff by calculating: 1) Anastasia's costs on the Gleam Glow Kit; 2) whether it makes economic sense to award any of the profits Anastasia earned by determining whether those profits were attributable to the use of the name "Hard Candy"; and 3) the "maximum" profits potentially attributable to Anastasia's use of the shade name "Hard Candy." The Defendant thus argues that Mr. Martinez's opinions were not in conflict with the law and properly provided a reliable profit analysis, including considering apportionment and the economic equities of the case, for purposes of assessing Plaintiff's damages under the Lanham Act.

In Reply, the Plaintiff contends that Mr. Martinez admitted that he was not testifying about equities of an award of Defendant's profits to the Plaintiff and further contends that such a determination should be made by the Court and not an expert, in any event, ECF No. [64] at 1. The Plaintiff further reasserts that Mr. Martinez's opinion on attribution of profits is unreliable for the same reasons that the Plaintiff advanced in its Motion to Exclude.

III.   **LEGAL FRAMEWORK**

A.   ***Admissibility of Expert Testimony***

Federal Evidence Rule 702 governs the admission of expert testimony in federal court, and provides:

If scientific, technical, or other specialized knowledge will

> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if (1) the
> testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).  Thus, a Court performs a "gatekeeping role" regarding admissibility of expert testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

The Eleventh Circuit has set out three requirements that an expert must meet before his or her opinions may be admitted. *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328 (11th Cir. 2014). First, the expert must be qualified on the matter about which he or she intends to testify. *Id.,* citing *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). Second, the expert must employ reliable methodology. *Id.*[3] Third, the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue. *Id.*

At the outset, the Court notes that it is "the exclusive province of the judge in non

---

[3]  In *Daubert*, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community."  *Wilson v. Taser Int'l, Inc.*, 303 Fed. Appx. 708, 714 (11th Cir. 2008) (citing *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 595. These factors may guide a district court's reliability inquiry, but the district court ultimately has "broad latitude" as to how it determines reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

jury trials to assess the credibility of witnesses and to assign weight to their testimony",
*Axiom Worldwide, Inc., v. Excite Medical* at 777, citing *Childrey v. Bennett*, 997 F.2d 830,
834 (11th Cir. 1993), and "[t]here is less need for the gatekeeper to keep the gate when
the gatekeeper is keeping the gate only for himself."  *United States v. Brown*, 415 F.3d
1257, 1269 (11th Cir. 2005). *Accord Bristol–Myers Squibb Co. v. Andrx Pharms.*, Inc., 343
F.Supp. 2d 1124, 1131 (S.D. Fla. 2004) ("The Court agrees that the question of reliability
and relevance in this case is merely one of degree. . . .This is especially true since this is
a bench trial, where the Court must evaluate the evidence regardless of whether it
ultimately decides to exclude it. . . .Thus, some courts have held that, in cases where the
judge is the factfinder, the criteria for finding evidence admissible can be applied less
strictly.") (internal citations omitted). Other circuits also recognize that there is a more
relaxed standard of admissibility in a bench trial.  *Loeffel Steel Products, Inc., v. Delta
Brands, Inc.*, 372 F. Supp. 2d 1104 1122–23 (N.D. Ill. 2005) (stating "Where, as here, the
case is tried to the court, the *Daubert* concerns are of lesser importance").  S*eaboard
Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) ("gatekeeping"
concerns not as significant in bench trial, but *Daubert* standards of relevance and
reliability must nevertheless be met); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir.2000)
("Most of the safeguards provided for in *Daubert* are not as essential in a case such as
this where a district judge sits as the trier of fact in place of a jury."); *Taubensee Steel &
Wire Co. v. Macsteel Int'l USA Corp.*, No. 9 C 1505, 2011 WL 1651239, at *4 (N.D. Ill. May 2,
2011) ("The Court notes that while the *Daubert* standards apply in a bench trial, concerns
about the trier of fact being fooled by evidence of dubious merit are lessened when the
judge is acting in that role. The Court is capable of evaluating this evidence and giving it

the weight that it deserves.") (internal citations omitted).[4]

        **B.**   *Damages under the Lanham Act, 15 U.S.C.A. § 1117(a)*

The damages available under the Lanham Act, 15 U.S.C. § 1117, are set forth in the Section of that Act entitled "Recovery for violation of rights," and provides,

(a)     Profits; damages and costs; attorney fees

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Thus, the Lanham Act provides that a plaintiff who prevails in a trademark infringement action "shall be entitled, subject to the provisions of [15 U.S.C. §§ 1111 and 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

---

[4] Since the Motion at issue was filed before it was clear that this case would be resolved in a bench trial, neither side addressed the import of this in their respective memoranda.

The Eleventh Circuit has made clear that in assessing damages under the Act the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. Further, if the court finds that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for the sum the court finds to be just, according to the circumstances of the case. *Slep-Tone Entertainment Corp., v. Johnson*, 518 F. App'x 815, 819 (11th Cir. 2013) (citing 15 U.S.C. 1117(a)).  Thus, a district court has considerable discretion to award damages that are appropriate to the unique facts of the case and when the court concludes that an award of profits is "excessive," the Act expressly provides that it may award an amount of damages as it shall find to be just. *Id.*  Finally, in *Burger King v. Mason*, 855 F. 2d 779 (11th Cir. 1988), the Eleventh Circuit stated, ". . . all monetary awards under Section 1117 are 'subject to the principles of equity,' [and] . . . no hard and fast rules dictate the form or quantum of relief." *Id.* at 783. (citation omitted).

IV.     **APPLICATION OF DAUBERT AND RULE 702 TO MARTINEZ'S OPINION**[5]

A.     *Mr. Martinez's Opinions as Contrary to Law*

Plaintiff contends that Mr. Martinez's opinions related to the disgorgement of the Defendant's profits, which is the only remedy that the Plaintiff seeks in this action, should be excluded because they are contrary to the law, ECF No. [44] at 5.   Specifically, Plaintiff

---

[5] The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *Id.* Thus, while it is necessary to evaluate each prong of *Daubert*, qualifications, methodology and helpfulness to the trier of fact, it is not necessary for the court to conduct the inquiry in that order.  This Order addresses the applicable *Daubert* prongs as they are raised in the Plaintiff's Motion to Exclude.

contends that through his opinions as stated in his Report, Mr. Martinez seeks to: 1) improperly require a showing of lost sales or profits by Plaintiff Hard Candy as a prerequisite to an award of damages to Hard Candy; and 2) improperly require a showing of an incremental financial benefit to Defendant Anastasia as prerequisite to an award of damages to Hard Candy.

### 1)  Plaintiff's Lost Sales or Profits or Other Damages

Plaintiff first argues that Mr. Martinez's Report improperly suggests that the law requires a showing of lost sales and/or profits by Plaintiff Hard Candy as a prerequisite to an award of damages for Defendant's infringing conduct.  In support of this contention, Plaintiff cites six paragraphs in Mr. Martinez's report (¶¶ 30-36) under the heading "Lost Profits of Plaintiff" as improperly suggesting that Hard Candy must show lost sales or lost profits as a prerequisite of an award of Defendant Anastasia's profits, ECF No. [44] at 11.  Plaintiff states that Mr. Martinez's opinion in this regard is flatly inconsistent with the holding in *Burger King v. Mason*, 885 F, 2d 779, (11th Cir. 1988), that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits.  The Plaintiff then goes on to explain that the source of Mr. Martinez's error stems from his reliance on *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F. 3d 23, 35 (1st Cir. 2002), a First Circuit case, which sets forth the bases to justify an accounting of the defendant's profits for trademark infringement.  Plaintiff contends that because the justifications identified in *Tamko* vary from those required by the Eleventh Circuit for purposes of awarding an accounting of an infringer's profits, Mr. Martinez's citations to that framework and those justifications and reliance upon them in arriving at his opinions

8

are contrary to the law and inadmissible.[6]

Plaintiff makes a similar argument regarding Mr. Martinez's discussion of the Plaintiff's lack of actual damages.  In this regard, the Plaintiff correctly notes that the Eleventh Circuit has made clear that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act.  *Burger King v. Mason*, 855 F. 2d 779, 781 (11th Cir. 1988).  The Eleventh Circuit has further held an award of profits based on either unjust enrichment or deterrence are not dependent upon a higher showing of culpability on the part of defendant who is purposely using the trademark. *Id.*   Thus, Plaintiff contends that because Mr. Martinez observes that the Plaintiff has not incurred any monetary damages and such an analysis is irrelevant for purposes of an award of an accounting of the Defendant's profits, that his report and his opinions contained therein are in contravention to the law, and not admissible.

In its response, the Defendant does not dispute that expert opinions that are in contravention to the law are excludable, and this Court agrees with that premise.  However, notwithstanding the fact the Mr. Martinez cited a First Circuit case rather than

---

[6] As correctly noted by Plaintiff, the First Circuit in *Tamko Roofing Products, Inc. v. Ideal Roofing Co.*, 282 F. 3d 23 (1st Cir. 2002) articulated three justifications for awarding a plaintiff an accounting of the defendant's profits, as follows: (1) as a rough measure of the harm to plaintiff; (2) to avoid unjust enrichment of the defendant; or (3) if necessary to protect the plaintiff by deterring a willful infringer from further infringement. *Id. at 36.* (collecting cases from other circuits applying same justifications).  *See Estate of Bishop*, 256 F.3d 1050, 1054 (10th Cir. 2001); *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994); *Aktiebolaget Electrolux v. Armatron Int'l Inc.*, 999 F.2d 1, 5–6 (1st Cir. 1993); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d. Cir. 1992).

The Eleventh Circuit, on the other hand, has held that an accounting of a defendant's profits is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct. *Optimum Technologies, Inc., v. Home Depot U.S.A., Inc.*, 217 F. App'x. 899, 902 (11th Cir. 2007) (citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990)).

an Eleventh Circuit case in stating the circumstances under which an accounting of

defendant's profits may be awarded in a trademark infringement case, a careful reading

of Mr. Martinez's report yields the conclusion that Mr. Martinez does not opine that the

Plaintiff must establish that it has incurred lost sales or profits or that it has suffered

other damages prior to the Court awarding an accounting of the Defendant's profits to the

Plaintiff.[7]   Rather, in his report, Mr. Martinez engages in various economic and market

analyses and advances several different opinions regarding the Court's consideration of

an award to the Plaintiff that include a possible award of the Defendant's profits.  In  the

early part of the report, following the Background section, Mr. Martinez correctly sets

forth Section 35(a) of the Lanham Act, 15 U.S.C. § 1117, which is the applicable statute for

economic remedies for trademark infringement and unfair competition claims, ECF No.

[44] at 11.  He then states the following, relevant to that statute, "I understand the

remedies available to the Plaintiff include the recovery of the Plaintiff's actual damages,

as well as disgorgement of profits made by the Defendant on any sales of allegedly

infringing products.  However, I understand any such recovery is subject to 'principles of

equity.'"  ECF No. [44] at 11. He then discusses that for actual damages the Plaintiff must

---

[7] The law in this Circuit is well settled that a plaintiff need not demonstrate actual damages to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act, 15 U.S.C.A. § 1117. *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988) (citing *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487 (11th Cir. 1987). An accounting for profits has been determined to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future. *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 585 (5th Cir.1980).  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981. In addition, in *Axiom Worldwide, Inc., v. Excite Medical Corp.*, 591 F. App'x 767 (11th Cir. 2014), the reviewing court found there is no requirement that a plaintiff show willfulness on the part of the defendant before awarding profits as actual damages under the Lanham Act. *Id.* at 776.

provide evidence to calculate damages to a reasonable certainty and the damages award cannot be too speculative or remote.  ECF No. [44] at 11-12.  Mr. Martinez then cites the First Circuit case of *Tamko Roofing Products* and lists three justifications for awarding a disgorgement of Defendant's profits as follows: 1) as a rough measure of the harm to plaintiff; 2) to avoid unjust enrichment of the defendant; or 3) if necessary to protect the plaintiff by deterring a willful infringer from further infringement, ECF No. [44] at 12.  He then notes that the Plaintiff's lost profits will be discussed in another section entitled Lost Profits of Plaintiff, and addresses the other two justifications of an award of Defendant's profits and explains that he is only offering an opinion as to one of those justifications, "unjust enrichment". ECF No. [44] at 12.[8]  Mr. Martinez then divides his opinion into three sections with section "A" being entitled "Lost Profits of Plaintiff," section "B" being entitled "Disgorgement of Defendant's Profits," and section "C" being entitled "Determination of Maximum Profits from Sales of the Accused Product Potentially Attributable to the Trademarks-In-Suit." The headings selected by Mr. Martinez are significant given the nature of the Plaintiff's challenge to his opinions because the discussions following each of those headings are not contrary to the law in this circuit regarding an award of a defendant's profits for engaging in infringing conduct.  In other words, although the Plaintiff is correct that the justifications given in the First Circuit's ruling in *Tamko* for an award of defendant's profits differ from the Eleventh Circuit's three justifications as to the first of the three, *i.e.* "a rough measure of the harm to plaintiff"

---

[8] Moreover, in his deposition, Mr. Martinez repeatedly states that his opinion is based on principles of economics and not a legal analysis. For example, when asked about his understanding as to whether a First Circuit case cited the law in the Eleventh Circuit, Mr. Martinez testified, "Again, I am not opining on anything legal in this matter, so I don't know the answer to that question." ECF No. [44-4] at 15.

versus "the defendant's conduct was willful and deliberate," that citation does not undermine or render the entirety of Mr. Martinez's opinion excludable.  Rather, to the extent that one of the three factors cited by Mr. Martinez differs in the First Circuit from that in this circuit is a matter for the trial court to weigh in assessing the credibility and weight to be given to Mr. Martinez's opinion.  Further, the substantive evaluation of the Plaintiff's lost profits, and/or the disgorgement of the Defendant's profits, would be unaltered in Mr. Martinez's report whether the First Circuit's standard was applied or the Eleventh Circuit's standard was applied because both "Lost Profits of Plaintiff" discussed in Section A of his Report and "Disgorgement of Defendant's Profits" as discussed in Section B of his Report are applicable to an award of damages under the Lanham Act.  Simply put, there is nothing in either Section A or B of Mr. Martinez's report that is inconsistent with the law of this circuit as it pertains to determining the amount of an appropriate award for violations of the Lanham Act.  This is particularly true given that all of the damages available to a plaintiff under the Lanham Act are subject to "the principles of equity" and an award of profits may be adjusted if the profits prove to be inadequate or excessive.  *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).

In his Report, Mr. Martinez does not contend that the Plaintiff must show a loss of sales or profits in order to warrant an accounting of the defendant's profits, rather Mr. Martinez opines that circuit courts have found held that one of the bases for awarding a plaintiff an accounting of a defendant's profits is "as a rough measure of the harm to the plaintiff." ECF No. [44] at 8.  Thus, Mr. Martinez does not opine that in order for the Plaintiff to obtain an accounting of the Defendant's profits that the Plaintiff must demonstrate its own losses or damages but rather states that such a showing is one of the justifications in the First and Ninth Circuit for an accounting.

12

Finally, the Plaintiff contends that because the Plaintiff is not seeking actual damages or lost profits that any opinion by Mr. Martinez related to those issues is only designed to confuse or mislead, ECF No. [44] at 11-12.  However, as set forth above, again because this is a non-jury trial, "There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."  *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005).

The Plaintiff has failed to cite to any case akin to the one at bar where an expert was excluded from testifying in a bench trial for arguably misstating the legal framework necessary to justify an evaluation of profits. Rather, it is "the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony." *Axiom Worldwide, Inc., v. Excite Medical* at 777, citing *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993).

### 2) Reference to Incremental Financial Benefit

For similar reasons, the Plaintiff's contention that Mr. Martinez's opinions should be excluded because an incremental financial benefit to Anastasia is not a prerequisite for Hard Candy to recover damages, also fails.  Relevant to this issue, Plaintiff contends that Mr. Martinez's opinion in paragraph 14 of his Report seeks to impose a requirement on Plaintiff to prove that Anastasia's infringement resulted in an incremental financial benefit to Anastasia, ECF No. [44] at 12.  Plaintiff contends that such a requirement is a misallocation of the burdens of proof and is contrary to law.

The Plaintiff's contention on this issue demonstrates that the Plaintiff misapprehends the parties' respective burdens under the Lanham Act related to damages.  The Plaintiff is correct that pursuant to the express language of the Lanham Act, the Plaintiff need only show defendants' gross sales of infringing goods when

13

seeking an accounting of the Defendant's profits. Critical to understanding the import of Mr. Martinez's opinion, however, is that the burden of proof under the Act then shifts to the Defendant to demonstrate its costs or deductions claimed. *Maltina Corp. v. Cawy Bottling Co., Inc., supra*, 613 F.2d at 586. As the Supreme Court has stated,

> The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark. The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributed to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer. In the absence of his proving the contrary, it promotes honesty and comports with experience to assume that the wrongdoer who makes profits from the sales of goods bearing a mark belonging to another was enabled to do so because he was drawing upon the good will generated by that mark.

*Mishawaka Rubber & Woolen Mfg. Co. V. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942). See *Nutrivida, Inc., v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315-16 (S.D. Fla. 1998) (stating, "the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits."). In other words, once the Plaintiff establishes the Defendant's sales for purposes of an accounting of the Defendant's profits, the Defendant then has the burden of asserting reasons, including costs or deductions, and/or any other equitable reasons for a reduction in the amount of sales for purposes of ascertaining the Defendant's profits.

In *Slep–Tone Entm't Corp. v. Johnson*, 518 F. App'x 815 (11th Cir. 2013), for example, the Eleventh Circuit evaluated the plaintiff's contention that the district court should have awarded it damages in the form of the defendant's profits earned from their

alcohol sales during the times that karaoke shows using the infringing trademark were performed in their bars. *Id*. at 819. The trial court had concluded that awarding profits was not appropriate in the case because although the plaintiff "may have proven defendants' bar sales by a preponderance of the evidence," it did not "trace[ ] those sales in a reliable way to karaoke performances." *Id*.  On appeal, the plaintiff argued that the district court should have awarded it profits because it proved that the defendants' conduct was willful and deliberate, and further contended that it was the defendants' burden to prove which portion of the bars' profits was not attributable to the infringement of the plaintiff's trademark. In affirming the trial court's determination regarding damages, after noting that the Lanham Act granted considerable discretion to the trial court to award damages that are appropriate to the unique facts of the case, the reviewing court concluded,

> In calculating the appropriate damages award in this case, the district court correctly observed that '[t]his is not the typical trademark case where the infringer produces a product and markets it under the trademark of another.' Accordingly, the defendants' profits do not necessarily provide an accurate—or even a reasonable—estimate of Slep–Tone's damages. As the court correctly pointed out, it defies common sense to assume that all the profits a bar makes during the time it is offering karaoke are attributable to the fact that it is offering karaoke. Nor was there any evidence presented at trial that reliably estimated what percentage of the defendants' profits was attributable to the fact that they offered karaoke. *Furthermore, the evidence at trial showed that the defendants did not directly profit from the fact that they offered karaoke shows bearing the SOUND CHOICE trademark;* they did not require customers to pay a cover charge during those times; nor did they charge a fee for a person to step up to the microphone and sing. On the facts of this case, the district court's award of actual damages of $9,585 was not 'clearly inadequate.' We therefore affirm that award.

*Id*. at 819-20. (emphasis added). Thus, the reviewing Court found no error in the trial court considering whether the defendant directly profited from the use of the trademark in

determining whether an accounting was appropriate.

In assessing whether defendants have met their burdens on this issue, Courts in this Circuit have considered arguments by defendants related to the defendant's profits in assessing whether a reduction in an award of a defendant's profits is warranted.  *See, e.g., Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07–22046–Civ, 2009 WL 8634834, at *15 (S.D. Fla. Apr. 29, 2009) (noting that use of plaintiff's trademark had minimal effect on generating profits at defendant's business); *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, No. 1:00–cv–1934–BBM, 2003 WL 22331254, at *23, *41 (N.D. Ga. May 9, 2003) (considering defendant's argument that deductions from defendant's profits appropriate based upon evidence demonstrating that some of the profits were not from sale of infringing product, as well as, low-margin nature of jeans sales).

Consistent with the Defendant's burden to establish that its profits were not entirely due to sales associated with the purported infringing trademark, Paragraph 14 of Mr. Martinez's Report summarizes Mr. Martinez's opinion that a reduction in the calculation of the Defendant's profits is equitable in this case by stating, "from an economic perspective, a remedy based upon the disgorgement of Anastasia's profits would be unrelated to, and significantly in excess of, the potential value (if any) contributed to Anastasia (or lost by Hard Candy) in connection with the alleged use of the Trademarks-in-Suit." ECF No. [44-3] at 8.  That paragraph thus says nothing about a prerequisite that Anastasia suffer an incremental financial benefit before the Court may consider an accounting of the Defendant's profits.

Thus, contrary to Plaintiff's contention that through Mr. Martinez's report the Defendant attempts to allocate this burden to the Plaintiff, Mr. Martinez's report attempts to meet the very burden that Plaintiff correctly contends falls to the Defendant.  Indeed,

16

the gist of Mr. Martinez's report on this issue appears to be that there are other factors, other than the use of the purported infringing mark, that contributed to the commercial success of the products at issue, ECF No. [44-3] at 15.   The Report concludes that an award based on disgorgement of profits would provide Hard Candy with a significant windfall counter to the principles of equity because those profits do not serve as a rough measure of harm to the Plaintiff and don't bear any relationship to any unjust enrichment to the Defendant, ECF No. [44-3] at 20-21.   Thus, although the Plaintiff may contend that Mr. Martinez's opinion fails to cite the standard in the Eleventh Circuit, it is difficult to comprehend how the Report fails to adequately place the burden of demonstrating a reduced profit or apportionment on the Defendant as required in this Circuit.   Indeed, this is the very type of evidence that various courts in this circuit have found to be probative when introduced by an infringing defendant.   *See Dering v. Serv. Experts Alliance LLC*, Nos. 1:06–CV–00357–RWS, 1:06–CV–00358–RWS, 2009 WL 1748067, at *3 (N.D. Ga. June 18, 2009) ("Therefore in a Lanham Act case, once a Plaintiff establishes revenues relating to infringement, the burden is on the infringer to show what portions of the revenues are not attributable to infringement."), *judgment vacated on other grounds*, 2009 WL 2032001 (N.D. Ga. July 2, 2009); *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07–22046–Civ, 2009 WL 8634834 , *13 (S.D. Fla. Apr. 29, 2009) (explaining that "a court may award all profits made during the infringing period, unless the infringer can prove that at least some of these profits flow from his own merit rather than from infringement of the plaintiff's mark"); *Am. Farm Bureau Fed'n v. Ala. Farmers Fed'n*, 935 F. Supp. 1533, 1552 (M.D. Ala. 1996) ("[A] court may award all profits made during the infringing period, unless the infringer can prove that at least some of these profits flow from his own merit rather than

17

from infringement of the registrant's mark.").[9]  The Plaintiff has not pointed to anywhere in Mr. Martinez's Report where he contends that the burden of establishing apportionment or an incremental financial benefit (*i.e.* sales or profits) belongs to the Plaintiff.  As such, the Plaintiff's argument on this point is without merit.

Plaintiff additionally argues that any incremental financial benefit to Anastasia is irrelevant to a calculation of Plaintiff's actual damages in the form of Defendant's profits, ECF No. [44] at 13.  Plaintiff further contends that because Anastasia's infringement was willful and deliberate that disgorgement of the defendant's profits is appropriate notwithstanding whether the defendant received only an incremental benefit.  The Plaintiff further argues that an assessment of whether the Defendant obtained an incremental financial benefit is irrelevant to the determination of whether the Defendant was unjustly enriched.  Finally, Plaintiff asserts that Mr. Martinez declined to offer any opinion on the justification of an award of defendant's profits based on deterrence to similar activity in the future and contends that an analysis of incremental financial benefit would be irrelevant to that analysis in any event. Thus, Plaintiff contends that whether Defendant received an incremental financial benefit is wholly irrelevant to an accounting

---

[9]  Numerous cases in other circuits have also placed this burden on the defendant. *See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, USA, Inc.*, 146 F. 3d 66 (2nd Cir. 1998) (holding that it was defendant's burden to prove any deduction for sales not based on the infringing mark as opposed to defendant's own well-known mark and reputation); *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) ("The burden was therefore on [defendant] to show that certain portions of its revenues ... were not obtained through its infringement of [plaintiff's] marks."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("[Defendant] contends that the multiple-game format and Nintendo-compatibility were the cartridges' selling point, not the use of the Nintendo trademark.... Even if [defendant's] assertion was plausible, [defendant] did not meet his burden of presenting any evidence at trial on how to apportion damages on this basis."); *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991) ("[B]oth common sense and the statute suggest that the burden of apportioning the profits should be placed on the defendants.").

of Defendant's profits, and should be excluded on this basis.

Based upon the above discussion of the Parties' relative burdens, it is clear that any assessment of an incremental financial benefit to the Defendant from the use or sale of the product with the alleged infringing trademark may, in fact, be highly relevant to the Court's determination of an appropriate award of Defendant's profits, subject to the principles of equity. Thus, Plaintiff's arguments that Mr. Martinez's evaluation of any financial benefit to the Defendants is irrelevant, is without merit.

The Plaintiff's citation to *Ameritox, Ltd., v. Millennium Laboratories, Inc.*, No. 8:11-cv-775-T-24-TBM, 2014 WL 1456347 *1 (M.D. Fla. April 14, 2014) does not change this analysis and the holding in *Ameritox* does not support a finding that Mr. Martinez's opinions should be excluded on this basis.  First, the trial court in *Ameritox* noted that the Eleventh Circuit has not spoken on the method for proving profits for false advertising claims. *Id.* at 9.[10]   Further, the Plaintiff seemingly asserts that in *Ameritox*, the trial court indicated that the plaintiff in that case *only* needed to establish the defendant's sales without having to show that the Defendant's profits were in any way related to the infringing product at issue.  However, a closer reading of *Ameritox* suggests otherwise. In *Ameritox*, the court quoted the statutory language from the Lanham Act and cited a case that tethered the profits that were to be disgorged from the defendant directly to the sales of the allegedly falsely advertised products.[11]  See *Ameritox* at 9-10 citing *Rexall*

_____

[10] Although the case at bar does not involve false advertising claims, there is nothing in the Lanham Act, which covers claims for both trademark infringement and false advertising, that suggests that the calculation of damages or appropriate awards to a plaintiff should be altered based upon the nature of the violation under the Act.

[11] Specifically, in *Ameritox*, the Court cited *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357 (E.D.N.Y. 2010) and quoted another court's analysis of *Rexall* by stating:

*Sundown Inc., v. Perrigo Co.*, 707 F. Supp. 2d 357, 359 (E.D.N.Y. 2010).  The approach in *Rexall* seems to be logical and consistent with the intent of the Lanham Act and thus the undersigned respectfully declines to follow the Plaintiff's suggested reading of *Ameritox,* which in any event, is not binding precedent, to conclude that a plaintiff only need to establish *any* sales by an infringing defendant without regard to whether those sales are related to *any* particular infringing product.[12]

---

> To be entitled to recover profits, [the plaintiff] must only prove [the defendant's] sales of the allegedly falsely advertised products. If [the defendant] fails to prove the sales not due to the allegedly violative conduct, [the plaintiff] may be entitled to all of [the defendant's] profits from the allegedly falsely advertised products—subject only to the principles of equity.
>
> [The plaintiff] has sufficient evidence of a likelihood of injury caused by [the defendant's] allegedly false advertising. [The plaintiff's] damages expert presented evidence of [the defendant's] sales of and profits from the allegedly violative products.... [The plaintiff] has presented sufficient evidence to allow a recovery of [the defendant's] profits.

*Ameritox*, at *10. (quoting *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 819 (D. Minn. 2011).  Thus, although the court in *Ameritox* states that the Act does not require the plaintiff to prove "sales due to false advertising" or "sales due to the violative conduct," the very opinions that the court cites properly allocate the initial burden to the plaintiff to "prove [the defendant's] sales of the allegedly falsely advertised products" and then places the burden on the defendant to then demonstrate an appropriate apportion of its profits. *Id.*

[12] Further, to the extent that the court's analysis in *Ameritox* seems to reach beyond that intended in the Lanham Act by requiring that the plaintiff only show the defendant's sales without regard to the actual use of the infringing product, the undersigned notes that the Lanham Act seemingly seeks  to provide a common sense approach to allocating a burden to the plaintiff based on what a plaintiff likely could be expected to ascertain about a defendant's business through discovery, as opposed to requiring the plaintiff to also bear the burden of disproving the defendant's costs or deductions, which seemingly would be within the defendant's knowledge regarding its method of conducting its business.

Accordingly, the Plaintiff's contention that Mr. Martinez's opinion should be excluded because he improperly considered whether a Defendant received a financial benefit from the use of the Plaintiff's trademark is without merit when, as discussed above, it is clear that courts in this Circuit as well as other Circuits, have considered such evidence in arriving at an appropriate equitable award.

      **B.**    *Mr. Martinez's Opinions on the Cosmetic Industry*

The Plaintiff contends that Mr. Martinez's opinions on the cosmetics industry are unreliable and should be excluded.  Specifically, Plaintiff contends that Mr. Martinez has no industry expertise or background in the cosmetics industry and has conducted no research sufficient to permit him to offer opinions on customer confusion, who Plaintiff's competitors are in the cosmetic industry, and the factors that drive consumer purchases in the cosmetics industry, ECF No. [44] at 16-17.

      **Federal Rule 703. Bases of an Expert's Opinion Testimony**

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Civ. P. 703.  At the beginning of his Report, Mr. Martinez states that in arriving at his opinions, he considered information from a variety of sources "including information produced in this litigation, information from independent research, and information from interviews with people with knowledge relevant to this case." ECF No. [44-3] at 7.  He further states that he considered information from the trade press and interviews with

Luca Carp, Vice President of Legal and Business Affairs at Anastasia; and Claudia Soare, President at Anastasia, ECF No. [44-3] at 7. The Plaintiff has not suggested that any of the sources relied upon by Mr. Martinez in crafting his opinions are improper or are not the types of facts or data that an expert in Mr. Martinez's field might not rely upon in a case of this nature.

Moreover, to the extent that Plaintiff's challenge on this basis is more appropriately viewed as an attack on the sufficiency of Mr. Martinez's qualifications, the challenge also fails.  Under the *Daubert* analysis, as to qualifications, an expert needs to be minimally qualified and any objections to the level of his expertise typically go to the credibility and weight of his opinion, not the admissibility of it.  *Vision 1 Homeowners Ass'n Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009); *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012). The test is "whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).  Rule 702 recognizes five bases for qualification: "knowledge, skill, experience, training, or education." However, "[e]xpertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y, Fla. Dep't of Children & Families*, 772 F.3d 1352, 1369 (11th Cir. 2014).

The undersigned has carefully reviewed the materials submitted regarding Mr. Martinez's qualifications and concludes that Mr. Martinez is well qualified to render economic opinions on the Plaintiff's profits, the Defendant's profits and the value of the use of the alleged infringing product in the Defendant's product.  In particular, Mr. Martinez's Curriculum Vitae (CV) states that he has more than twenty-five years of

experience in intellectual property damages quantification, intellectual asset licensing and complex financial modeling, ECF No. [44-3] at 26.  His CV reflects that he has an A.B. in economics from Stanford University, and an M.B.A. from UCLA.  The CV further provides that Mr. Martinez has worked with clients across a range of industries and has extensive experience in quantifying economic damages.  He is a Certified Public Accountant, and a Certified Patent Valuation Analyst and Certified Licensing Professional, ECF No. [44-3] at 26.  Finally, the CV reflects that he has extensive experience in royalty assessments, and has performed market analyses wherein a patented product is sold, and has assessed lost profits stemming from alleged infringements, ECF No. [44-3] at 27.

At his deposition, Mr. Martinez testified that although he did not have experience in the cosmetic industry, he believed that he had the qualifications to address the remedies in a trademark infringement action akin to this one, ECF No. [44-4] at 9.  He stated that he was not offering himself as an expert in the cosmetics industry but that he has addressed and assessed various industries from an economic perspective and felt comfortable opining on information that he viewed related to the industry. ECF No. [44-4] at 9.

The undersigned notes that on this issue, those sections of the report that discuss the cosmetics industry are limited to the specific products at issue in this case and cite and quote trade publications, other publications including forbes.com  and abcnews.go.com, on-line social media research, marketing promotions and discovery documents for support of the facts set forth in the report.  Given the nature of Mr. Martinez's expertise, it is not necessary, nor likely possible, for him to have an extensive background in each of the industries for which he provides market and profit analyses, or in order for him to determine customer trends or calculate profits for a particular

industry.   Thus, the undersigned concludes that Mr. Martinez's opinions that include

references and assumptions related to the cosmetics industry are not unreliable.

Moreover, as stated above, it is for the trier of fact to determine the credibility and

persuasiveness of Mr. Martinez's opinion at trial, and then to determine whether the

Defendant has met its burden of proof for damages. Thus the defects alleged by the

Plaintiff in this case affect the weight of Mr. Martinez's opinions rather than their

admissibility. *See Daubert*, 509 U.S. at 596; *Quiet*, 326 F.3d at 1341.

C.   *Reliability of Mr. Martinez's Reductions to Defendant's Profits*

Plaintiff next contends that Mr. Martinez's opinion testimony should be excluded

because his application of a 75% factor to reduce profitability is unreliable, ECF No. [44]

at 19.  On this issue, the Plaintiff asserts that although Mr. Martinez opines that the

allegedly infringing trademark only applies to one of the four colors in the make-up kit,

and thus only accounts for 25% of the sales of that kit, his assumption is wrong because

the testimony from Anastasia's representative confirms that the colors were never going

to be sold as single items and there was never any consideration of a refill for the kit,

ECF No. [44] at 19-20.  The Plaintiff similarly contends that Mr. Martinez's application of a

10% reduction to the Defendant's profits based upon a royalty rate has no legitimate

basis and  reflects a flawed and unsupported methodology, which renders the calculation

unreliable.

The methodology through which an expert reaches his opinion must be reliable.

*Rink v. Cheminova, Inc.*, 400 F. 3d 1286, 1292 (11th Cir. 2005). The reliability requirement

turns on several factors that vary depending on the opinions and testimony at issue, and

include the following well-known Daubert factors:

(1) whether the expert's theory can be or has been tested;

(2) whether the theory has been subject to peer review and publication;

(3) the known or potential rate of error of the particular scientific technique; and

(4) whether the technique is generally accepted in the scientific community.

*United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). [13]

Expert testimony that is not "the product of reliable principles and methods" is not admissible under Federal Rule of Evidence 702(c). To be "reliable," the methodology that informs an expert opinion must have a "rational foundation." *United States v. 77,819.10 Acres of Land*, 647 F.2d 104, 108 (10th Cir. 1981). "[A] court may properly scrutinize anomalous conclusions and reject expert opinion if the expert fails to identify and defend the reasons why his scientific methodologies yielded novel results." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1316 (11th Cir. 1999) (citation omitted).

Significantly, when evaluating an expert's methodology, it is not for the court to determine the accuracy or correctness of the conclusions reached; instead, the court focuses solely on the propriety of the methods and principles the expert used in forming his conclusions. *Rosenfield v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). Rather, cross-examination, presentation of contrary evidence, and instruction on the burden of proof, rather than exclusion, are the appropriate tools for challenging disputed expert evidence. *Id.* Indeed, "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002). *See also Quiet Tech.*, 326 F.3d at 1345 (observing that, "[n]ormally, failure to include

---

[13] The reliability requirements and *Daubert* factors "are only illustrative and may not all apply in every case." *United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005).

variables will affect the analysis' probativeness, not its admissibility" (quoting *Bazemore v. Friday*, 478 U.S. 385, 400, (1986))).

As to the reliability of Mr. Martinez's 75% reduction based upon the configuration of the make-up kit, the Plaintiff's contention that the testimony demonstrated that the colors were never going to be sold separate does not undermine the validity of Mr. Martinez's methodology in applying such a reduction.  This is so because in the Report, Mr. Martinez explains that his calculation on this issue was initially based upon the fact that only one of the four colors in the make-up kit was alleged to have been that of the infringing trademark.  Thus, he assessed the total incremental profit of that particular color at 25% of the entire product, notwithstanding any testimony from any witness.[14]

As to the application of the royalty rate, at his deposition, Mr. Martinez testified that he concluded that 10% was an excellent proxy for the value of the name "Hard Candy" because that is the royalty rate that Plaintiff Hard Candy negotiated with New World Corporation for licensing of the brand name and trademarks and logos, ECF No. [44-4] at 19.  He further stated that it represented a perfect proxy for the value that's contributed by just the name alone. ECF No. [44-4] at 19.

Mr. Martinez acknowledged that he had not previously used or seen used a royalty rate applied to the apportionment of profits cases, but he believed that the facts of this case were such that the royalty rate by its nature demonstrated the value of the mark. ECF No. [44-4] at 19-20.  He then stated, "I am doing a calculation of the contribution of the marks to the profits earned by the defendant." ECF No. [44-4] at 19.  Mr. Martinez

---

[14] It is worth noting that earlier in the report, Mr. Martinez also considered and compared the sales of another 4-pack kit, that did not include the "Hard-Candy" color, that was released at the same time as the kit at issue and noted that there the two products generated a very similar average revenue. ECF No. [44-3] at 16.

testified that the royalty rate was exactly on point for what he was looking for in terms of the contribution of the trademarks. ECF No. [44-4] at 22.  He stated that he was trying to determine the "relative contribution of the Hard Candy marks to the products that are alleged to have infringed those marks, and in that agreement that the plaintiff entered into they-they indicated 10% was the relative contribution." ECF No. [44-4] at 22.

Thus, the Report makes clear that Mr. Martinez does not apply a royalty rate to the Defendant's profits for purposes of calculating what those profits total.  Rather, Mr. Martinez uses the royalty rate that was used in a licensing agreement with a third party for the same trademark to argue that even the Plaintiff believes that a fair assessment of the worth and/or contribution of the use of the trademark at issue in other products is only 10% of sales by a third party, ECF No. [44-3] at 23.  Such a calculation is relevant to any equitable considerations that the Court might apply to the award to the Plaintiff as well as to determine whether the recovery based on profits is excessive so that the Court may adjust the recovery accordingly as directed by the applicable statute.  Similarly, to the extent that section 35(a) of the Lanham Act directs that the sum awarded to a plaintiff shall constitute compensation and not a penalty, Mr. Martinez's assessment of what a fair award is based upon the worth of the trademark at issue is relevant and admissible, even if his assessment considers what a reasonable royalty would be.  Furthermore, simply because witnesses may disagree as to the most reliable method for calculating damages does not require the exclusion of Mr. Martinez's opinion. Such arguments go more to the weight of the evidence, than the admissibility of the evidence under *Daubert*. See *Taylor, Bean & Whitaker Mortg. Corp.*, 2008 WL 3819752, at *4 (stating "The certainty and correctness of [the expert's] opinion will be tested through cross-examination and presentation of contrary evidence and not by a Daubert challenge.")  The Court may

27

choose to disregard, give less weight to, or adopt Mr. Martinez's suggestions and opinions regarding how to best determine an equitable award of the Defendant's profits. The Plaintiff has failed to establish that the method used by Mr. Martinez is unreliable, where the royalty rate relied upon is for the same trademark at issue, and again, is used merely to suggest the worth of the trademark in contributing to the Defendant's profits arising from the sale of make-up kit that contains the purportedly infringing name.

For these reasons, Mr. Martinez's testimony regarding the defendant's profits from the use of the trademark will not be excluded. His methods are reliable and his opinions are relevant to the issue of damages.

### D. *Mr. Martinez's Testimony Will Assist the Trier of Fact*

To the extent that the Plaintiff asserts that Mr. Martinez's opinion will not be helpful to the trier of fact in this case, based upon the nature of the case, the undersigned concludes that Mr. Martinez's opinions satisfy the helpfulness prong of the *Daubert* analysis. If infringement liability is established, the Court will have to determine the appropriate amount of damages. The economic calculations related to an accounting of the Defendant's profits, including whether a reduction for costs and/or other equitable deductions should be made and in what amount is complex.  Accordingly, Mr. Martinez's testimony will be helpful to the Court in elucidating relevant aspects of these issues.  If the Court concludes that the testimony is not helpful, since this is a bench trial, the Court can disregard those opinions.

### V.    CONCLUSION

Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion to Exclude the Expert

Opinion Testimony and Report of Christopher A. Martinez, (sealed), ECF. No. [44] is

**DENIED.**

  **DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this 13th day

of January, 2018.

              _Andrea M. Simonton_

            **ANDREA M. SIMONTON**
            **CHIEF UNITED STATES MAGISTRATE JUDGE**


**Copies via CM/ECF to:**
   **The Honorable Kathleen M. Williams**

   **All parties of record**